MICHAEL MOURADIAN & another[1] vs. GENERAL ELECTRIC
COMPANY.

Middlesex. January 15, 1987. — February 24, 1987.

Present: GREANEY, C.J., KAPLAN, & ARMSTRONG, JJ.

*Employment,* Discrimination. *Anti-Discrimination Law,* Termination of employment. *Practice, Civil,* Retroactive effect of judicial decision, Amendment. *Civil Rights,* Termination of employment. *Husband and Wife,* Consortium.

Tort and contract claims in an action by an employee at will, alleging unlawful age discrimination in his dismissal by a former employer, were barred by the decision in *Melley* v. *Gillette Corp.,* 19 Mass. App. Ct. 511 (1985), which held that such an employee's remedy lies exclusively in administrative proceedings under the Anti-Discrimination Law, G. L. c. 151B, and, inasmuch as this court had declined to recognize any independent common law remedy based on the public policy expressed in that statute, the *Melley* holding was applicable retroactively to govern the present action. [541-543]

An employee at will who had failed to present his age discrimination claim in timely administrative proceedings before the Massachusetts Commission Against Discrimination had no independent right to seek relief by means of a claim against his former employer for violation of the State Civil Rights Act, G. L. c. 12, §§ 11H & 11I. [543]

Where a husband presented no valid tort claim arising from alleged unlawful age discrimination by his former employer, the wife's claim for loss of consortium was properly dismissed. [543-544]

CIVIL ACTION commenced in the Superior Court Department on September 18, 1984.

The case was heard by *Joseph S. Mitchell, Jr.,* J., on a motion to dismiss.

*Irving Marmer* for the plaintiffs.
*Sandra L. Lynch* for the defendant.

───────────────

[1] His wife, Nancy Mouradian.

GREANEY, C.J., By his complaint, Michael Mouradian sought damages from General Electric, his former employer, for his alleged wrongful termination on the basis of age discrimination. Mouradian's wife, Nancy, sought damages for alleged loss of consortium. General Electric filed a motion to dismiss the complaint for lack of jurisdiction and failure to state a claim. Mass.R.Civ.P. 12(b) (1) and (6), 365 Mass. 755 (1974). The motion was allowed and judgment entered dismissing the action. We affirm the judgment.

The complaint makes the following statement. General Electric told Mouradian when he began his employment in 1947 that employees were seldom discharged for lack of work. If there was insufficient work in one division, it was company policy to transfer the employee to another position within that division or to give the employee preference for transfer elsewhere in the company. There were further representations that satisfactory work would lead to promotions and salary increases until retirement at age sixty-five. Other than a brief interval when he served in the Navy, Mouradian continued to work for General Electric in its quality control division, receiving promotions and raises.

On September 28, 1981, Mouradian's supervisor advised him in writing that, because of "a required readjustment of the work force," Mouradian's services in his present job would not be needed after November 27, 1981. Mouradian was told that he should use the sixty-day period "to actively pursue suitable employment." He was also informed of his eligibility "to receive a best possible offer" and that "job opportunities for you will be reviewed by [m]anagement during the next 30 days."

Mouradian did not receive a work assignment within the quality control division, nor did he receive assistance in finding a comparable position elsewhere in the company. Most of the positions within the division were filled by younger applicants. However, General Electric's personnel office found Mouradian a position two levels below the one he then held. In this position, he would be reporting to junior personnel.

Mouradian refused the employment reduction; he was urged to retire early. As an additional inducement to retire, he was offered an extension of his employment into 1982 so that he could receive vacation pay for that year. Mouradian accepted early retirement and left General Electric on January 2, 1982, at age fifty-five.

Having made these factual assertions, the gravamen of the complaint is explained by the following accusation: "GE's actions were part of a willful plan to dismiss Mouradian from his employment because of his age. His position was eliminated presumably as a result of reorganization, and he was given notice of lack of work. In reality, Mouradian's responsibilities and work functions continued and were required by GE. They were simply removed from Mouradian, separated, and delegated to others within GE. He was intentionally offered one position of lesser responsibility, commensurately lower salary, and subordinate to younger people whom Mouradian had instructed and trained. Acceptance would cause a reduction in rank and adversely change the employment materially. It was calculated to be economically disadvantageous and personally demeaning."

This accusation is then spread into eight claims, set forth in separate counts, seeking recovery for: (1) breach of the employment contract; (2) breach of the implied covenants of good faith and fair dealings; (3) breach of the implied covenant of continuance of employment for longevity of service; (4) breach of public policy in termination of employment for no valid business reason; (5) tort for breach of the duty of good faith and fair dealing; (6) tort for breach of public policy in termination of employment; (7) violation of statutes, the Anti-Discrimination Law, G. L. c. 151B, § 4(1), and the Civil Rights Act, G. L. c. 12, §§ 11H and 11I; and (8) for consequential damages by Nancy Mouradian for her loss of society and companionship.

To these recitals, we add the following. After leaving General Electric, Mouradian filed a complaint with the Massachusetts Commission Against Discrimination, claiming that his termination was based on age and thus in violation of G. L. c. 151B, § 4(1), and 29 U.S.C. §§ 621-634 (1982), the Federal

Age Discrimination in Employment Act. The commission dismissed the complaint because Mouradian had not sought relief within relevant limitations periods prescribed by G. L. c. 151B.

1. Mouradian concedes that all of his claims, with the exception of his claim under G. L. c. 12, §§ 11H and 11I (which we shall discuss in part 2 of this opinion), are barred by *Melley* v. *Gillette Corp.,* 19 Mass. App. Ct. 511 (1985), which holds that the remedy for an at-will employee who asserts wrongful termination on grounds of age discrimination lies exclusively in a claim brought in accordance with the procedures set forth in G. L. c. 151B, the Anti-Discrimination Law.[2] As has been noted, Mouradian had sought relief under G. L. c. 151B and Federal age discrimination laws but has lost any rights he might have had under these statutes because of his failure to file an administrative complaint in a timely manner. Mouradian argues, however, that the *Melley* decision should not be applied retroactively to his case because *Melley* was decided on March 21, 1985, after the effective date of his termination (January 2, 1982), and the date of the filing of his action in the Superior Court (September 18, 1984). Mouradian bases this argument on his characterization of *Melley* as "creat[ing] a novel and unforeshadowed rule."

The argument misses the point of the *Melley* case. The decision notes that there has never been a common law action for termination of an at-will employee because of age. Thus, the enactment of the Anti-Discrimination Law created a remedy where before there was none. As was said in *Melley*: "We think that where, as here, there is a comprehensive remedial statute [namely, c. 151B], the creation of a new common law action based on the public policy expressed in that statute would interfere with that remedial scheme. Not only would the legislative preference for an administrative solution be circumvented, but serious problems would be posed as to the extent of the remedy to be provided." *Id.* at 513. As did the plaintiff in *Melley,* Mouradian asks us to recognize a new, and

[2] This result was upheld by the Supreme Judicial Court by rescript opinion reported at 397 Mass. 1004 (1986).

possibly duplicative, common law action based on violation of public policy, that policy being the one expressed in c. 151B. "The difficulty with [Mouradian's] argument is that a finding that certain conduct contravenes public policy does not, in itself, warrant the creation of a new common law remedy for wrongful dismissal by an employer." 19 Mass. App. Ct. at 511. See also *Crews* v. *Mermorex Corp.*, 588 F. Supp. 27, 28-30 (D. Mass. 1984); *Flynn* v. *New England Tel. Co.*, 615 F. Supp. 1205, 1210 (D. Mass. 1985); *Walters* v. *President & Fellows of Harvard College*, 616 F. Supp. 471, 474 (D. Mass. 1985).

It is of no significance that Mouradian's claims are framed in terms of several different violations of express and implied contract and separate torts because they all have a common denominator — a supposed entitlement to recover on common law principles for alleged wrongful termination because of age, a right which *Melley* refused to recognize. A cause of action which has never existed cannot magically be created by a plaintiff's attempting to invoke the exception to the general rule which favors retroactive application of decisional law.[3]

*Melley,* of course, recognizes that, despite G. L. c. 151B, a plaintiff in Mouradian's position may have a claim against his employer on some other recognized common law ground. On this point, the decision provides an example by referring

---

[3] Retroactivity considerations may be involved when a new cause of action is recognized or an existing cause of action broadened. See, e.g., *Tucker* v. *Badoian,* 376 Mass. 907, 918-919 (1978) (Kaplan, J., concurring); *Rosenberg* v. *Lipnick,* 377 Mass. 666, 670-673 (1979); *Whitinsville Plaza, Inc.* v. *Kotseas,* 378 Mass. 85, 97-98 (1979); *Payton* v. *Abbott Labs,* 386 Mass. 540, 565-570 (1982); *Schrottman* v. *Barnicle,* 386 Mass. 627, 631-638 (1982). Here, however, retroactivity analysis is unnecessary. The *Melley* decision did not change the law. Indeed, the basis of the holding is that G. L. c. 151B stated only a statutory remedy and could not be read to create new common law rights. As has been noted by Professor Davis: "If an interpretative rule is merely an interpretation of a statute, and if the meaning of the statute has been there from the time of its original enactment, then no problem of a retroactive interpretative rule can arise, for either the interpretative rule expresses the true meaning of the statute or it does not; if it does, then that is what the statute has always meant and the rule has not changed the law. . . ." 1 Davis, Administrative Law § 5.09 (1958).

(at 513) to the case of *Comey* v. *Hill,* 387 Mass. 11 (1982), in which the wrong sued upon, and recovered for, was the tort of interference with an advantageous relationship. By contrast, Mouradian's complaint sets forth nothing that would justify an inference that any independent and cognizable contract or tort claim exists. The complaint merely dresses a straightforward c. 151B claim in several different outfits.[4]

2. Mouradian maintains that his claim for violation of the Civil Rights Act, G. L. c. 12, §§ 11H and 11I, should have survived the motion to dismiss. There may be a case in which the termination of an at-will employee could give rise to a tenable complaint seeking relief under G. L. c. 12, §§ 11H and 11I. This is not such a case, as the only "right[] secured by the . . . laws of the commonwealth" (the operative words of c. 12, § 11H, in this instance) is the right which could have been enforced under the procedures established by c. 151B. In the circumstances, G. L. c. 12, §§ 11H and 11I, do not create an independent right to vindicate an alleged wrong which might have been the subject of investigation and possible vindication under G. L. c. 151B, were it not for Mouradian's delay.[5]

3. Relying on decisions which characterize a spouse's right to recover for loss of consortium as independent of the remedy afforded the injured spouse, see *Ferriter* v. *Daniel O'Connell's Sons,* 381 Mass. 507, 529-530 (1980); *Foley* v. *Polaroid*

---

[4] There is nothing in *DeRose* v. *Putnam Management Co.,* 398 Mass. 205 (1986), relied upon by Mouradian, which helps his case. *DeRose* allowed recovery to an at-will employee who was terminated for reasons contrary to public policy, namely for refusing to accede to his employer's wish that he testify falsely at a criminal trial. The decision permits a recovery for violation of an important public policy, notwithstanding prior cases limiting recovery in at-will termination cases to those of overreaching for financial gain by the employer. The decision has no effect on the rule in *Melley.*

[5] We note that while we need not examine Mouradian's civil rights claim in greater detail, it is dubious whether he has alleged the requisite "threats, intimidation, or coercion" to state such a claim. See *Bell* v. *Mazza,* 394 Mass. 176, 184 (1985). Otherwise, on the facts pleaded, every routine reassignment or transfer in employment could be a violation of G. L. c. 12, §§ 11H and 11I.

*Corp.*, 381 Mass. 545, 553 (1980);[6] *Feltch* v. *General Rental Co.,* 383 Mass. 603, 606-608 (1981); *Morgan* v. *Lalumiere,* 22 Mass. App. Ct. 262, 271 (1986), Nancy Mouradian argues that her claim for loss of consortium should not have been dismissed. Any recovery for loss of consortium by her here would require proof of a tortious act that caused injury to her husband. Prosser & Keeton, Torts § 125 (5th ed. 1984). See *Diaz* v. *Eli Lilly & Co.,* 364 Mass. 153, 163-167 (1973); *Agis* v. *Howard Johnson Co.,* 371 Mass. 140, 146 (1976). For the reasons already discussed, no valid tort claim is alleged in this case. Despite the general "principle of independence [we must] recognize the pervasive interrelationship between . . . [Nancy's] claim for loss of consortium and the claims of . . . [Mouradian]." *Fidler* v. *E. M. Parker Co.,* 394 Mass. 534, 548 (1985). The consortium claim was also properly dismissed.

4. This is not a case where leave to amend would do any good, as the claims in the complaint are uncorrectable. See *Shaw* v. *Siegel,* 13 Mass. App. Ct. 258, 263-265 (1982). Compare *Mathias* v. *Beatrice Foods Co., post* 915, 918 (1986) (allowing consideration of possible amendments because the judge mistakenly used Mass.R.Civ.P. 56 to dismiss all claims for wrongful termination). As a consequence, the entry in the Superior Court must be:

*Judgment affirmed.*

---

[6] The *Ferriter* and *Foley* decisions refer to a recovery for loss of consortium when the injured spouse is limited to recovery under G. L. c. 152, the worker's compensation act. We note in passing that the right to recover for loss of consortium under c. 152 has been eliminated by St. 1985, c. 572, § 35, amending c. 152, § 24.